United States District Court
Southern District of Texas

**ENTERED**

March 23, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PETER MAKHLOUF, Individually and on Behalf of all others Similarly situated, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-16-0838 |
| TAILORED BRANDS, INC. and DOUGLAS S. EWERT, | § § § | |
| Defendants. | § § | |

OPINION AND ORDER

Pending before the Court in the above referenced Federal Rule of Civil Procedure 23(a) and (b)(3) securities class action on behalf of all persons who purchased or otherwise acquired Tailored Brands, Inc.[1] ("TLRD") securities between June 18, 2014 and December 9, 2015 (the "Class Period"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") of 1934 against TLRD and its CEO, Douglas S. Ewert, are the following motions: (1) motion of Jacksonville Police and Fire Pension Fund ("Jacksonville") and Oklahoma Police Pension and Retirement System's ("OPPRS'," collectively, the "Funds'") motion for appointment of the Funds to serve as Lead Plaintiffs and for

---

[1] On January 29, 2016, Men's Warehouse, Inc. announced publicly that on February 1, 2016 it would convert to a hold-company structure to be called Tailored Brands, Inc.  In this restructuring, Men's Warehouse shareholders exchanged their shares one-for-one for shares of the new company, which trades on the New York Stock Exchange under the symbol, "TLRD."  Although during the Class Period the Company was known as Men's Warehouse, for clarity, to avoid confusion, the Court refers to the entity throughout this opinion as "TLRD."

approval of Bernstein Liebhard, LLP as Lead Counsel, and of The
Bilek Law Firm, LLP to serve as Liaison [local] Counsel, pursuant
to 15 U.S.C. § 78u-4, as amended by the Private Securities
Litigation Reform Act of 1995 (the "PSLRA") (instrument #7); (2)
Strathclyde Pension Fund's (the "Pension Fund's") motion for
appointment of the Pension Fund as Lead Plaintiff and approval of
the Pension Fund's selection of Robbins Geller Rudman & Dowd, LLP
as Lead Counsel and Edison McDowell & Hetherington LLP as Local
Counsel (#10); and (3) The Pension Fund's motion to strike the sur-
reply [titled "Supplemental Submission," #40] or, in the
alternative, for leave to respond to the sur-reply (#41).

This federal securities suit arises out of the contentious
acquisition by TLRD of one-time rival Joseph A. Bank Clothiers,
Inc. ("JOS") and optimistic, but allegedly misleading, statements
made during it.   Ultimately TLRD purchased JOS, which was
subsequently determined to be a deeply troubled company, at an
excessive price, with the integration not proceeding as materially
misrepresented to TLRD shareholders and with adverse facts not
disclosed to them during the Class Period.   TLRD's stock became
artificially inflated, Class members purchased it at highly
inflated prices, and they suffered economic loss when revelations
of its actual financial situation reached the market.

### Applicable Law: the PSLRA

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(I) of the PSLRA, which
amended the Exchange Act by adding Section 21D, 15 U.S.C. § 78u-4,

in class actions under the federal securities laws "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead plaintiff or proposed small, cohesive group of lead plaintiffs to oversee the class action. *In re Waste Management, Inc. Securities Litigation*, 128 F. Supp. 2d 401, 409 (S.D. Tex. 2000). Initially there is a presumption that the plaintiff or cohesive group of plaintiffs with the largest financial interest in the outcome of the litigation is the "most adequate" Lead Plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii). *Id.* That presumption may be rebutted if a member of the purported plaintiff class proves that the proposed individual or entity will not fairly and adequately protect the interests of the class or that the proposed Lead Plaintiff is subject to unique defenses that make him, her, it or them incapable of adequately representing the class. *Id.,* citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Moreover, the Lead Plaintiff or Plaintiffs must not only have the largest financial interest in the outcome of the suit, but must also meet the four requirements of Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 411. The plaintiff seeking appointment as Lead Counsel or

certification as class representative bears the burden of affirmatively proving that it satisfies the requirements of Rule 23. *Berger v. Compaq Computer*, 257 F.3d 475, 481 (5th Cir. 2001). Nevertheless the distinction between a Lead Plaintiff, the prerequisites for which or whom are set out in the PSLRA, and a Rule 23-qualified class representative, is clarified by the Second Circuit:

> Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.  Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.  *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002)("[T]he fact that the lead plaintiff is to be selected in accordance with objective criteria that have nothing to do with the nature of the claims . . . strongly suggests the need for named plaintiffs in addition to any lead plaintiff.")

*Havesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2003); see also *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669 (C.D. Cal. 2005)(quoting *Havesi*)("Irrespective of the lead plaintiff's standing . . ., the class may pursue any claim that at least one named plaintiff has standing to pursue."); *Greater Pennsylvania Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, No. 04 C 1107, 2005 WL 61480, *7 (N.D. Ill. Jan. 10, 2005)(quoting *Havesi*). The Second Circuit further noted,

> Also, considering that the role of the lead plaintiff is "to empower investors so that they--not their lawyers-- exercise primary control over private securities litigation." S. Rep. No. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 683, any requirement that a

different lead plaintiff be appointed to bring every
single available claim would contravene the main purpose
of having a lead-plaintiff--namely to empower one or
several investors with a major stake in the litigation to
exercise control over the litigation as a whole. *See In
re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 123
("The only other possibility--that the court should
cobble together a lead plaintiff group that has standing
to sue on all possible causes of action--has been
rejected repeatedly by courts in the Circuit and
undermines the purpose of the PSLRA"). . . .

*Id.* at 82 n.13. The Second Circuit further observed, "[T]he PSLRA

does not in any way prohibit the addition of named plaintiffs to

aid the lead plaintiff in representing a class." *Id.* at 83. *See*

*also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286

(S.D.N.Y. 2003)("The PSLRA does not prohibit the addition of named

plaintiffs to aid Lead Plaintiff in representing the class. . . .

The PSLRA lead plaintiff provisions ensure that the securities

litigation is driven by investors; it is not . . . a substitute for

the class certification process."), *appeal granted in part on other*

*grounds, Havesi*, 366 F.3d 70.

Thus, "[w]hile . . . *lead* plaintiffs appointed pursuant to the

PSLRA need not satisfy all elements of standing with respect to the

entire lawsuit, the selection of lead plaintiffs does not remove

the basic requirement that at least one *named* plaintiff must have

standing to pursue each claim alleged." *In re Salomon Analyst*

*Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004)(*citing the*

*following cases*: *In re Global Crossing Sec. Litig.*, 313 F. Supp. 2d

189, 205 (S.D.N.Y. 2003)("Lead Plaintiffs have a responsibility to

identify and include named plaintiffs who have standing to

represent the various potential subclasses who may be determined .
. . to have distinct interests or claims"); *In re WorldCom Sec.
Litig.*, 294 F. Supp. 2d at 422; *In re IPO Sec. Litig.*, 214 F.R.D.
117, 122-23 (S.D.N.Y.); *Lewis v. Casey*, 518 U.S. 343, 358 n.6
(1996)(plaintiffs with one sort of injury lack standing to
challenge a different, though perhaps related, injury because
"standing is not dispensed in gross"); *Griffin v. Dugger*, 823 F.2d
1476, 1483 (11th Cir. 1987)("a claim cannot be asserted on behalf
of a class unless at least one named plaintiff has suffered the
injury that gives rise to that claim.").

While defendants at this stage of the litigation lack standing
to challenge the plaintiffs' motions to appoint Lead Plaintiff,
they may subsequently in a class certification hearing object to
the adequacy of any proposed person or group of persons as Lead
Plaintiff. *Waste Management*, 128 F. Supp. 2d at 409-10. Under
the PSLRA the Court has supervisory power and may *sua sponte*
consider the adequacy of any proposed Lead Plaintiff, and it has an
independent duty to evaluate the appointment of lead counsel. *Id.*
at 410.

Under 15 U.S.C. § 78u-4(a)(3)(B)(v)("The most adequate
plaintiff shall, subject to the approval of the court, select and
retain counsel to represent the class."), the Lead Plaintiff
selects and retains Lead Counsel to represent the class, subject to
court approval, but the Court should not alter the Lead Plaintiff's
choice of Lead Counsel unless it is necessary to "protect the

interests of the [plaintiff] class." *Waste Management*, 128 F. Supp. 2d at 411.  Plaintiff bears the burden of demonstrating his and his attorneys' adequacy. *Berger*, 257 F.3d at 480-81.

After the filing of a complaint under § 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(A)(I), a Plaintiff moving for appointment as Lead Plaintiff

> shall cause to be published in a widely-circulated national business-oriented publication or wire service, a notice advising members of the purported class–
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period;
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

Thus a plaintiff need not be the first to file a complaint to be appointed Lead Plaintiff.  If more than one suit is filed with nearly the same claims, only the plaintiff in the first-filed action is required to publish notice.  15 U.S.C. § 78u-4(a)(3)(A)(ii).

The complaint in this action was filed on March 29, 2016, establishing the deadline for applying to be Lead Plaintiff as May 31, 2016.  The first two motions for appointment of Lead Plaintiff and Approval of Selection of Lead Counsel were timely filed on May 31, 2016 (#4 and 5) by The Employees' Retirement System of the Puerto Rico Electric Power Authority and by Peter Makhlouf, Oakland County Volunteer Benefit Association, and Oakland County Employees' Retirement System, respectively.  Both motions were subsequently

withdrawn.  #20 and 21.    The two still pending motions from the Funds and from the Pension Fund were also timely filed on May 31, 2016.

> After the 60-day period expires, the district court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

Section 21D(a)(3)(B) of the amended Exchange Act requires the Court to adopt a rebuttable presumption that

> the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(iii)(I).

The PSLRA does not set out a procedure for determining the "largest financial interest" among the proposed class members. This Court, *inter alia*, has applied a four-factor inquiry first established in *Lax v. Merchants Acceptance Corp.*, No. 97 C 2715, *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997): "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *In re Waste Management*, 128 F. Supp. 2d 401, 409 n.4 (S.D. Tex. May

8, 2000); *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 440 (S.D. Tex. 2002).

Where the motion for appointment seeks to appoint more than one Lead Plaintiff, "that group must be restricted to a few cohesive parties and the movant must bear the burden of demonstrating that the group not only has the largest interest in the outcome of the litigation, but also a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action." *Enron*, 206 F.R.D. at 442 ([T]o satisfy the terms and effectuate the underlying policy of the PSLRA to guarantee effective control of the litigation and supervision of the lawyers by the plaintiffs, unrestricted aggregation of unrelated plaintiffs by manipulating lawyers should not be permitted.  Instead, where a movant seeks appointment of a group of Lead Plaintiffs, that group must be restricted to a few cohesive parties and the movant must bear the burden of demonstrating that the group not only has the largest financial interest in the outcome of the litigation, but also a pre-litigation relationship based on more than the losing investments at issue in a securities fraud action."), *citing In Re Waste Management*, 128 F. Supp. 2d at 412-13, and *Berger*, 257 F.3d at 478 n.2.  *See also In re Texlon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999)("[T]he context and structure of the PSLRA evince the intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common *other than* the twin fortuities that (1)

they suffered losses and (2) they entered into retainer agreement with the same attorney or attorneys.").

## Motion to Strike Sur-Reply

The Pension Fund moves to strike the Funds' improper sur-reply, entitled "Supplemental Submission to address Strathclyde's Pension Fund's New Evidence" (#40), filed without leave of Court, or alternatively moves for leave of Court to respond to it.  #41. The Funds contend that in the Pension Fund's reply brief the Pension Fund relied on a newly submitted investment brochure ("Investing Responsibly" (#36-1, 36-2, 36-3), and a Declaration of Richard Keery (#36-4) to support its motion.  Furthermore on July 5, 2016, in support of a separate motion for appointing itself as part of a three-member lead plaintiff group in a different case,[2] with connections between group members similar to those between Jacksonville and OPPRS, the Pension Fund submitted briefing and another Declaration from Richard Keery.

While the Federal Rules of Civil Procedure and this Court's Local Rules do not expressly permit the filing of a sur-reply by a non-movant to a movant's rebuttal brief, "[a] sur-reply is

---

[2] *Melbourne Municipal Firefighters' Pension Trust Fund v. Express Scripts Holding Co.*, 1:16-cv-03338-KMW (S.D.N.Y.) ("*Express Scripts*").  The Keery Declaration filed in *Express Scripts* is attached as Ex. A to #40 ("Joint Declaration in Support of Motion of the LGPS Investor Group for Appointment As Lead Plaintiff"), referred to as the "*Express Scripts* Keery Decl."  The Memorandum of Law in support of the Strathclyde Group's motion in *Express Scripts*, attached to #40 as Exhibit B, is referred to as the "*Express Scripts* Mem."

appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage." *Murray v. TXU Corp.*, No. Civ. A. 3:03CV0888P, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005). *In accord, e.g., Austin v. Kroger Texas L.P.*, No. 3:11 CV 1169 B, 2016 WL 1322248, at *1-2 (N.D. Tex. Apr. 5, 2016); *Brackens v. Dallas Indep. Sch. Dist.,* No. 3:09 CV 0642 D, 2010 WL 5464823, at *4-5 (N.D. Tex. Sept.20, 2010), report and recommendation adopted, 2010 WL 5485886 (N.D. Tex. Dec. 30, 2010); *Elwood v. Cobra Collection Agency,* No. CIVA2:06CV91KSJMR, 2006 WL 3694594, at *7 (S.D. Miss. Dec. 14, 2006); *Simmons v. T-Mobile USA, Inc.*, Civ. A. No. H-06-1820, 2006 WL 3447684, *1 (S.D. Tex. Nov. 22, 2006).. Leave to file a surreply is not appropriately granted where the proposed surreply does not include new arguments or evidence or merely restates arguments in the movant's response. *Lombardi v. Bank of America*, Civ. Action No. 3:13-cv-1464-O, 2014 WL 988541, at *3 (N.D. Tex. Mar. 13, 2014).

The Pension Fund claims that the Funds do not even try to, and cannot, suggest that the Pension Fund's reply brief raised a new argument for the first time on reply, but they simply want to have the last word in opposing the Pension Fund's motion. *See generally Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)("Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on the matter.").

## Court's Decision

The Court has carefully reviewed all submissions of the Funds and of the Pension Fund, which are all institutional investors.[3] As a threshold matter, the Court finds that both the Funds and the Pension Fund, each a proposed Lead Plaintiff, and their proposed Lead and Liaison Counsel are highly sophisticated, qualified, and experienced for the positions that they seek here and are able to prosecute this class action vigorously.   Both sides satisfy adequacy and typicality requirements of Rule 23, having suffered the same or substantially the same injuries as the class members as a result of the same course of conduct and misrepresentations by the named Defendants, and the proposed Lead Plaintiffs' claims are based on the same, or substantially the same, legal theories under Sections 10(b) and 20(a) of the Exchange Act.

The central issue here is "which is the most adequate plaintiff" and has the "largest financial interest in the relief sought by the class" for this class action.

Jacksonville, established in 1937 and, as of September 30, 2015, holding over $1.43 billion in assets, provides retirement allowances and other benefits for current and retired police

---

[3] A number of courts have found that the legislative history of the PSLRA reveals a strong preference for institutional investors to serve as Lead Plaintiffs, based on H.R. Rep. No. 104-369 at 3 (1995)(Conference Report)("The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs . . . ."). *See, e.g., In re PB, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 439-40 (S.D. Tex. 2010)(citing cases).

officers and firefighters for the City of Jacksonville, Florida. OPPRS, as of September 15, 2014 holding over $2.2 billion in net assets, is an agency of the government of Oklahoma that manages the public pension system for municipal police officers in Oklahoma, providing pension benefits such as normal retirement, disability retirement, surviving spouse benefits, and a death benefit.  The Funds claim they are a cohesive "group" of two institutional investors.

Nevertheless the Court notes that only when the two are aggregated together, however, do they have the largest financial interest in the outcome of the litigation.  Neither Fund alone has the largest financial interest in the outcome of the litigation; individually, the Pension Fund has the greatest financial interest of the class members in the outcome of the litigation. Jacksonville lost $1,943,593 under the LIFO ("last-in-first-out) and FIFO (first-in-first-out) accounting methods, while OPPRS lost $1,166,502 under LIFO and $962,023 under FIFO.  Together, the Funds lost $3,110,095 under LIFO and $2,905,617 under FIFO.  #8 at p.5 and Ex. 4; Seidman Decl. #9-2 and #9-3.  The Pension Plan's individual estimated loss is $2.1 million.  #22 at p. 8.

While both Jacksonville and OPPRS have acted as co-Lead Plaintiffs in a number of federal securities class actions, they have not done so with each other, but only with third parties.  #8 at p. 9 (listing cases where one or the other has recovered substantial funds from class actions).

The Pension Fund, which was established in 1974 in Glasgow, Scotland, has over 21,000 members and assets exceeding 15 billion pounds, thereby one of the top United Kingdom pension funds, states that it bought over 64,500 shares of TLRD stock at artificially inflated prices and was holding nearly 50,000 shares at the end of the Class period.  As noted, it suffered losses of approximately $2.1 million under both FIFO and LIFO accounting methods as a result of Defendants' alleged wrongdoing.  #10 at p. 6  Edison Decl., Exs. B-C.  It claims it is well suited to serve as Lead Plaintiff because it is a single institution with prior experience in serving as a Lead Plaintiff with significant financial interest in the relief sought by the class here, and is represented by a single competent and resourceful financial firm. *Enron*, 206 F.R.D. at 458; *id.*

The Pension Fund contends that the Funds are unrelated entities artificially paired together by their manipulative counsel, solely in hopes of attaining the largest aggregated financial interest.  It points out that the Funds' Joint Declaration (#8-11 at ¶6) proclaims that they "believe our joint leadership will benefit the class through our ability to share resources and engage in joint decision-making." Such a statement, lacking all specifics, fails to satisfy the Funds' burden to show a pre-litigation relationship based on more than the losing investments at issue in this class action and provides "no clear or persuasive reason why [these funds] have joined together to apply

-14-

for Lead Plaintiff in this litigation other than an effort to amalgamate their losses to be greater than their competitors' or to detract from obstacles that one would face as a single applicant." *Enron*, 206 F.R.D. at 455.   Their Joint Declaration also asserts that the Funds' "common interest also arises out of [their] shared goals as public safety funds."   #8-1 at ¶7.   The Pension Fund argues that "the same thing could be said for any of the dozens of safety pension funds in Florida, Georgia, Kansas, Louisiana, Mississippi, New Mexico or Texas—or **any** pension fund, for that matter."   #22 at p. 5.   The Joint Declaration also states that the Pension Funds "each belong to the National Conference on Public Employee Retirement Systems ('NCPERS') and, as representatives of their respective funds, have attended numerous professional and education conferences and meetings together . . . [and] we are familiar with each other's organizations."   #8-1 at ¶7.   NCPERS "is the largest trade association for public sector pension funds, representing more than 550 funds throughout the United States and Canada."   *See* http://www.ncpers.org/media (last visited June 16, 2016). The Pension Fund maintains that it is not believable that membership in a 550-member organization with thousands of individual participants constitutes a meaningful relationship. This Court agrees.   In fact this Court rejected similar state pension fund movants in *Enron* that identified mutual membership in the Councils of Institutional Investors and National Association of Public Pension Attorneys because the Funds "fail to provide any

details about the size of these groups, the specific work they did together and the nature of their involvement and its relevance to their relationship in this securities fraud action.  They do not demonstrate that they have any prior mutual litigation experience." 206 F.R.D. at 455.  Judge Hoyt denied Jacksonville's motion in *Local 210 Unity Pension and Welfare Funds v. McDermott*, No. H-13-CV-2393, where Jacksonville also identified its common membership in NCPERS with yet another pension fund.  #23, Myers Decl. Ex. 1-3. The Funds have failed to cite a single case where the two have worked together as co-Lead Plaintiffs; instead the only preexisting relationship evidenced in the Joint Declaration is between each entity and its counsel.  Aside from their losing investment in TLRD and the same counsel, there is no relationship between the two Funds.

The Funds' Memorandum of Law (#24) raises two final objections: (1) that The Pension Fund is subject to several unique defenses that renders it atypical of and inadequate to serve on behalf of the other class members; and (2) that if the Pension Fund is appointed Lead Plaintiff, because it is located in Scotland and executes its investment strategies through numerous foreign, third-party investment managers and consultants, international discovery will be required, unduly increasing costs, causing delays, and wasting Defendants' funds available for discovery.  The Funds claim that the Pension Fund's investment strategy requires it to invest in companies only if they satisfy certain labor, safety and human

rights protocols.  In 2012 the Pension Fund hired Global Engagement Services ("GES") to work with companies and decide if they satisfied these protocols in the garment district, an industry often criticized as the site of human rights violations or safety concerns, such as in Bangladesh, where some TLRD clothing is manufactured.  The Funds argue that these goals make the Pension Fund atypical of other class members in its unique motivations for investing in TLRD.

The Funds assert that as an example of a pre-litigation relationship based on more than their losing investments in TLRD, because both Funds protect pensions of police officers, they have a common bond as protectors of first responders, in addition to belonging to NCPERS and attending conferences and meetings together.

In reply (#34), the Pension Fund emphasizes that the Funds fail to cite a single case for their speculative charges that the Pension Fund's responsible investment strategy renders it atypical and that its location in Scotland will increase litigation costs and require disqualification of it as a presumptive lead plaintiff for such reasons.[4]  Instead the Pension Fund points out, courts

---

[4] The failure to cite case law in support of one's argument "is insufficient to rebut the presumption" to which a Lead Plaintiff is entitled under the PSLRA.  *Baughman v. Pall Corp.*, 250 F.R.D. 121, 128 (E.D.N.Y. 2008).  "[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be

have declined to disqualify the presumptive lead plaintiff based on conjecture as to increased costs due to foreign location and rejected baseless speculations as proof of inadequacy. *See, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011)(rejecting challenge that Danish pension fund would "saddle the class with unnecessary and additional costs"; "courts in this District and others have routinely appointed foreign investors as lead plaintiff"), and *Teran v. Subaye, Inc.*, Nos. 11 Civ. 2614 (NRB) and 3886(NRB), 2011 WL 4357362, at *8 (S.D.N.Y. Septs. 16, 2011)("[B]aseless conjecture cannot serve as 'proof' of [a party's] inadequacy."). The Pension Fund emphasizes that the Funds do not argue that the Pension Fund's claims arise from a different event or course of conduct than the other class members', nor that the Pension Fund and its counsel have a conflict of interest. Before making such bald representations about the Pension Fund's motivations in deciding to invest in TLRD, the Funds' counsel should have at least checked the Pension Fund's website for information about its investment strategy because the brochure publicly available on it would have shown two key statements: (1) "Strathclyde Pension Fund does not seek to influence our external managers' investment processes, but rather acts as an active owner and engages in depth with portfolio companies in regard to international norms."; and (2) "Strathclyde Pension Fund did not

_____

uniquely subject." *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004).

engage with Tailored Brands during 2014-2015 regarding environmental, social, or governance issues." Myers Reply Decl., Ex. A at 2, 21. The Pension Fund's Investment Manager, Richard Keery, has also confirmed that "GES has nothing whatsoever to do with SPF's investment decision making process," that "GES never has had any role in recommending any investment to SPF," and that "[n]either SPF nor to my knowledge, GES has ever engaged with Tailored Brands." *Id.*, #36-4, Ex. B at ¶¶5-7. None of the articles that the Funds quote extensively in their opposition even mentions Tailored Brand; instead they discuss responsible investing generally, another clothier, H&M, and the collapse of a building in Bangladesh that killed hundreds of garment workers. #24 at p.9. The Funds do not explain how the Bangladesh building collapse and engagement with H&M, publicly disclosed by the Pension Fund, "somehow creates a unique defense involving J.P. Morgan's decision to purchase Tailored Brands stock" for the Pension Fund, "a leap too far-fetched to qualify as 'proof.'"

This Court concurs with the Pension Fund that it has the largest individual loss of any entity in this securities fraud action and that it satisfies Rule 23's typicality and adequacy requirements. It has demonstrated that it is entitled to the most adequate plaintiff presumption. At the same time, for the reasons argued by the Pension Fund with evidentiary support, the Court is unpersuaded by the Funds' efforts to present itself as a cohesive "group" of pension funds with a meaningful pre-litigation

relationship based on more than their losing investment.

In their Supplemental Submission/Sur-reply (#40) the Funds object to the Pension Fund's "newly submitted" brochure (#36-1 through 36-3) and Declaration of Richard Keery (#36-4), as well as another Keery declaration in support of a separate motion (#40, Ex. A, with Memorandum of Law, Ex. B) for appointment of The Pension Fund as one of a three-member lead plaintiff group in a different case, *Melbourne Municipal Firefighters' Pension Trust Fund v. Express Scripts Holding Co.*, 1:16-cv-03338-KMW (S.D.N.Y.). The Funds argue that the brochure (#36-1 through #36-3) and the Declaration, as new evidence, further support the Funds' contention that the Pension Fund is atypical of the class members.

The Court agrees with the Pension Fund that the Funds "Supplemental Submission" is in the nature of a surreply. Because the Pension Fund has introduced new evidence in its Reply, because full briefing is fair and useful to the adjudication of the case, the Court denies the Pension Fund's motion to strike, grants its alternative request for retroactive leave to file surreply, and considers the arguments it puts forth in its Supplemental Submission.

The Funds highlight that the brochure (#36-1 at p. 2) states, "In order to implement the [ESG[5]] Principles . . . GES works with

_____

[5] "ESG" stands for environmental, social and corporate governance issues, which the Pension Fund believes "can affect the performance of investment portfolios (to varying degrees across companies, sectors, regions, asset classes and through

[the Pension Fund] to monitor [its] investment managers' engagement activities and monitor how the information from these activities feeds into [its] managers' investment processes."  In addition, they state that the Pension Fund "will incorporate ESG issues into investment analysis and decision-making processes." *Id.*  In turn, the Keery Declaration (#36-4 at ¶7) states that J.P. Morgan ("JPM") "engage[d]" with TLRD on ESG issues and "incorporate[d]" that information in its decision to buy TLRD for the Pension Fund.  #36-1 at p. 2.  Therefore, insist the Funds, the Pension Fund's investment is atypical of most class members' who did not investigate or rely on TLRD's ESC record.  The Funds assert that the Pension Plain failed to demonstrate that GES did not engage TLRD:  it did not submit a declaration from GES or JPM regarding the extent to which either engaged TLRD.  Keery's Declaration states that "to the best of [Keery's] knowledge[,]" GES did not engage TLRD (#36-4 at ¶ 7), but, in contrast, the brochure reports that GES "direct[ly] engage[d] with many of the international brands involved in Bangladesh," including at least seven clothing companies like TLRD.  #36-3 at p. 17.

The Pension Fund responds that the brochure "confirms neither it nor GES 'seeks to influence [the] external managers' investment processes," (#34 at p.1), but instead unambiguously states, "We [the Pension Fund] do not seek to influence . . . [external

---

time)."  #36-1 at p.2.

managers]," and states nothing about GES.

The Funds also claim that in the *Express Scripts* case, the Pension Fund's motion for appointment as one of a group of three pension funds that are affiliated by their membership in an approximately 100-member pension scheme existing throughout the United Kingdom known as LGPS, also demonstrates the Funds are a proper lead plaintiff "group." LGPS is "one of the largest defined benefit schemes in the world" with more that 5.1 million members. #40, Ex. A (*Express Scripts* Keery Decl.) at ¶5. The proposed lead plaintiff group is part of an "organization comprised exclusively of LGPS Funds . . . [which] seeks to protect the long-term investment interests of beneficiaries by promoting the highest standards of corporate governance and corporate responsibility among investee companies." *Id.* at ¶ 6. The Funds conclude that the Pension Fund has changed its view from its earlier argument that the two pension funds' membership in a 550-member organization with thousands of individual participants and attendance at numerous professional meetings and education conferences together, where they interacted, constituted a meaningful, cohesive relationship. Now it argues that view was not credible nor persuasive. #22 at p.6. The Funds reiterate that they have a common bond in representing police officers charged with protecting the public and they both belong to NCPERS. In *Express Scripts*, the Pension Fund did not attest to any interactions with other LGPS group members before that litigation.

After considering the Pension Fund's argument in its motion to strike or for leave to respond to surreply (#41), in the interests of justice, the Court denies the motion to strike and grants the leave to respond.

First the Pension Fund points out that, speculating again, the Funds claim that "it is reasonable to **assume** that as [the Pension Fund's] 'investment manager[],' JPM 'engage[d]' with TLRD on ESG issues and 'incorporate[d]' such information in its decision to buy TLRD" for the Pension Fund.  #40 at p. 2(emphasis added).  The Pension Fund reiterates that "[b]lind assumptions-contradicted by the facts--are not 'proof.'"  #34 at p. 2; *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007)("Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration."); *Constance Sczesny Trust*, 223 F.R.D. at 324-25 ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject.").

Regarding the issue of whether the Pension fund's advisor, GES, engaged TLRD, #40 at pp. 2-3, the Pension Fund proclaims "that information is totally irrelevant to [the] Pension fund's stock ownership because 'GES never has had any role in recommending any investment to SPF'" and "[n]either SPF nor, to my knowledge, GES has ever had any role in recommending any investment to SPF."  #36-

4 (Keery Decl. sworn under oath).  The only pertinent information
would be if the Pension Plan engaged TLRD, but it did not.  *Id.* at
¶7; #36-3 at 21 (brochure--chart showing Pension Fund's "holdings
engaged on during 2014/15").  Furthermore, even if the Funds'
hypothesis were correct, but it is not, the Funds have failed to
cite any authority that, let alone articulate how, the Pension Fund
could be atypical or distracted by an advisor's use of
environmental, social, and governance-based factors, in addition to
stock price (and the factual information reflected in that price)
to make an investment decision.  The Pension Fund insists it could
not be, citing *In re Petrobas Sec. Litig.*, 312 F.R.D. 354, 360-61
(S.D.N.Y. 2016)(rejecting defendants' "claim that USS's trading
decisions were based on atypical considerations" because it
"followed a special investment strategy that 'look[s] at extra
financial factors' that 'the market does not accurately reflect'
and finding that "[s]uch general statements do not seriously call
the typicality of USS's claims into question" as "it is common
practice for money managers to claim they have some special
strategy that will deliver insights--and returns--superior to the
wider market").  Moreover, the PSLRA does not require the Pension
Fund to submit additional declarations to negate repeated theories
that the factual record shows have been refuted.  The burden of
proof is on the members of the class "to come forward with some
proof that the unique defenses raised are legitimate issues that
will likely be litigated at trial" and it is improper to shift that

burden to the presumptive lead plaintiff.  *OFI Risk Arbitrages v. Cooper Tire & Rubber Co*. 63 F. Supp. 3d 394, 403 (D. Del. 2014). Once the court identifies the presumptive lead plaintiff as (1) the person or group that filed the complaint or made a motion for appointment as lead plaintiff, (2) has the largest financial interest in the relief sought, and (3) satisfies Rule 23 typicality and adequacy requirements, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc), that presumption may be rebutted by opposing parties "only upon proof" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class," or that the presumptive lead plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(()(aa)-(bb).

As for the Pension Fund's role in a different case (*Express Scripts*) in a different court and different circuit involving different facts and different relationships among different parties represented by different counsel, the Funds' suggestion that the Pension Fund somehow conceded that the Funds' informal grouping in the instant case before this Court is misplaced.  The Court agrees.

The Court concurs with the Pension Fund that it should be appointed Lead Plaintiff and its chosen attorneys, Robbins Geller Rudman & Dowd, LLP be appointed as Lead Counsel and Edison McDowell & Hetherington LLP as Liaison Counsel.  It is clear that individually the Pension Fund has the largest financial interest in the outcome of the litigation.  Lead Plaintiff has submitted

evidence and case law showing that it is not subject to unique defenses that make it incapable of representing the class and that the Funds lack a pre-litigation relationship based on more than the losing investments at issue here.

Accordingly, for the reasons stated above, the Court

ORDERS the following:

(1) the Pension Fund's motion to strike (#41) the sur-reply [titled "Supplemental Submission," #40] is DENIED but its alternative motion for leave to respond to the sur-reply (#41) is GRANTED;

(2) the Funds' motion for the appointment of the Funds to serve as Lead Plaintiffs and approval of their selected attorneys as Lead Counsel and Liaison Counsel (#7) is DENIED; and

(3) the Pension Fund's motion for appointment of the Pension Fund as Lead Plaintiff and approval of the Pension Fund's selection of Robbins Geller Rudman & Dowd, LLP as Lead Counsel and Edison McDowell & Hetherington LLP as Local Counsel (#10) is GRANTED.

**SIGNED** at Houston, Texas, this 23nd day of March, 2017.

_____
UNITED STATES DISTRICT JUDGE
MELINDA HARMON